UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALEX CICCOTELLI, | ) |
| Plaintiff, | ) ) ) ) Case No. _____ |
| v. | ) ) ) JURY TRIAL DEMANDED |
| THE BANK OF FINCASTLE, GEORGE EDWIN HOLT, III, CHARLES STEELE, GREGORY R. GERSACK, KIRTESH PATEL, JOHN W. RADER, JR., STEVEN W. SPICKARD, C. RAY SPRINKLE, ROBERT C. WAGNER, FIRST NATIONAL CORPORATION, and FIRST BANK, | ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. This action stems from a proposed transaction announced on February 18, 2021 (the "Proposed Transaction"), pursuant to which The Bank of Fincastle ("Fincastle" or the "Company") will be acquired by First National Corporation ("First National") and First Bank.

2. On February 18, 2021, Fincastle's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with First National and First Bank.  Pursuant to the terms of the Merger Agreement, Fincastle's stockholders will have the right to receive one of the following: (i) $3.30 in cash, (ii) 0.1649 shares of First National common stock, or (iii) a combination of cash and shares of First National common stock for each share of Fincastle common stock they own.

3.     On April 27, 2021, defendants filed a proxy statement/prospectus (the "Prospectus") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4.     The Prospectus omits material information with respect to the Proposed Transaction, which renders the Prospectus false and misleading.  Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Prospectus.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6.     This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.     Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8.     Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Fincastle common stock.

9.     Defendant Fincastle is a Virginia state-chartered commercial bank.  Fincastle's common stock is traded OTC under the ticker symbol "BTFL."

10.    Defendant George Edwin Holt, III is Chairman of the Board of the Company.

11. Defendant Charles Steele is President, Chief Executive Officer, and a director of the Company.

12. Defendant Gregory R. Gersack is a director of the Company.

13. Defendant Kirtesh Patel is a director of the Company.

14. Defendant John W. Rader, Jr. is a director of the Company.

15. Defendant Steven W. Spickard is a director of the Company.

16. Defendant C. Ray Sprinkle is a director of the Company.

17. Defendant Robert C. Wagner is a director of the Company.

18. The defendants identified in paragraphs 10 through 17 are collectively referred to herein as the "Individual Defendants."

19. Defendant First National is a Virginia corporation and a party to the Merger Agreement.

20. Defendant First Bank is a Virginia state-chartered member bank, a wholly-owned subsidiary of First National, and a party to the Merger Agreement.

## SUBSTANTIVE ALLEGATIONS

*Background of the Company and the Proposed Transaction*

21. Fincastle has been a leading financial services provider in the Roanoke region since 1875, and offers a full range of banking, lending, and investment products.

22. The Company has six full-service branches, thirteen ATM locations, and offers online deposit account opening, online real-estate and consumer loan applications, online banking, mobile banking, and 24/7 telephone banking.

23. On February 18, 2021, Fincastle's Board caused the Company to enter into the Merger Agreement with First National and First Bank.

24. Pursuant to the terms of the Merger Agreement, Fincastle's stockholders will have the right to receive one of the following: (i) $3.30 in cash, (ii) 0.1649 shares of First National common stock, or (iii) a combination of cash and shares of First National common stock for each share of Fincastle common stock they own.

25. According to the press release announcing the Proposed Transaction:

> First National Corporation (the "Company" or "First National") (NASDAQ: FXNC), the bank holding company of First Bank ("First Bank") and The Bank of Fincastle ("Fincastle") (OTCPK: BFTL) jointly announced today the signing of a definitive merger agreement. . . .
>
> First National will acquire Fincastle for a combination of stock and cash valued at approximately $3.09 per share for each share of Fincastle's common stock outstanding. Under the terms of the agreement, Fincastle shareholders could elect, for each share of Fincastle common stock, to receive 0.1649 shares of First National stock, or $3.30 in cash, or a combination of stock and cash, subject to election and proration such that the aggregate consideration will consist of 80 percent First National stock and 20 percent cash. Based on First National's closing stock price of $18.40 as of February 17, 2021, this equates to an aggregate deal value of approximately $31.6 million. . . .
>
> The merger agreement has been unanimously approved by the boards of directors of each company. The transaction is expected to close in the third quarter of 2021, subject to approval of both companies' shareholders, regulatory approvals and other customary closing conditions.
>
> First National and First Bank will appoint three Fincastle directors to join the existing eight legacy directors on each respective Board. Scott Steele, the President and Chief Executive Officer of Fincastle will join First Bank as the First Bank Regional President.
>
> Piper Sandler & Co. served as financial advisor and Nelson Mullins Riley & Scarborough, LLP provided legal counsel to First National. Janney Montgomery Scott LLC served as financial advisor, RP Financial, LC served as fairness advisor, and Godfrey & Kahn, S.C. served as legal counsel to Fincastle.

*The Prospectus Omits Material Information*

26. Defendants filed the Prospectus with the SEC in connection with the Proposed Transaction.

27. As set forth below, the Prospectus omits material information with respect to the Proposed Transaction.

28. First, the Prospectus omits the Company's and First National's financial projections.

29. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

30. Second, the Prospectus omits material information regarding the analyses performed by the Company's financial advisor in connection with the Proposed Transaction, RP Financial, LC ("RP").

31. With respect to RP's Comparable Transactions Analysis, the Prospectus fails to disclose the individual multiples and metrics for the transactions observed in the analysis.

32. With respect to RP's Control Premium Analysis, the Prospectus fails to disclose the individual multiples and metrics for the companies observed in the analysis.

33. With respect to RP's Discounted Cash Flow Analysis, the Prospectus fails to disclose: (i) the projections used in the analysis; (ii) the terminal values; (iii) RP's basis for applying control terminal value multipliers of 18.0 to 22.0 times to year 5 earnings per share and 1.00 times to 1.40 times to year 5 tangible book value per share; and (iv) the individual inputs and assumptions underlying the range of discount rates of 10% to 13%.

34. With respect to RP's Pro Forma Impact Analysis, the Prospectus fails to disclose: (i) the estimated transaction costs, restructuring charges, and cost saves used in the analysis; and (ii) the extent to which the Proposed Transaction will be accretive to First National's pro forma

earnings per share within the first year of completing the merger.

35. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

36. Third, the Prospectus fails to disclose the terms of Janney Montgomery Scott LLC's ("Janney") engagement, including: (i) the amount of compensation Janney has received or will receive in connection with its engagement; (ii) the amount of Janney's compensation that is contingent upon the consummation of the Proposed Transaction; (iii) whether Janney has performed past services for any parties to the Merger Agreement or their affiliates; (iv) the timing and nature of such services; and (v) the amount of compensation received by Janney for providing such services.

37. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

38. Fourth, the Prospectus fails to disclose whether the Company entered into any non-disclosure agreements that contained standstill and/or "don't ask, don't waive" provisions.

39. Without this information, stockholders may have the mistaken belief that, if these potentially interested parties wished to come forward with a superior offer, they are or were permitted to do so, when in fact they are or were contractually prohibited from doing so.

40. Fifth, the Prospectus fails to disclose the terms and values of the proposals, indications of interest, and letters of intent submitted during the process leading up to the execution of the Merger Agreement.

41. The Company's stockholders are entitled to an accurate description of the process leading up to the Proposed Transaction.

42. The omission of the above-referenced material information renders the Prospectus false and misleading.

43. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## COUNT I

**Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Fincastle**

44. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

45. The Individual Defendants disseminated the false and misleading Prospectus, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. Fincastle is liable as the issuer of these statements.

46. The Prospectus was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Prospectus.

47. The Individual Defendants were at least negligent in filing the Prospectus with these materially false and misleading statements.

48. The omissions and false and misleading statements in the Prospectus are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure

as significantly altering the total mix of information made available in the Prospectus and in other information reasonably available to stockholders.

49. The Prospectus is an essential link in causing plaintiff to approve the Proposed Transaction.

50. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

51. Because of the false and misleading statements in the Prospectus, plaintiff is threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants, First National, and First Bank

52. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

53. The Individual Defendants, First National, and First Bank acted as controlling persons of Fincastle within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or Board members of Fincastle and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Prospectus, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

54. Each of the Individual Defendants, First National, and First Bank was provided with or had unlimited access to copies of the Prospectus alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

55. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Prospectus contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Prospectus.

56. First National and First Bank also had supervisory control over the composition of the Prospectus and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Prospectus.

57. By virtue of the foregoing, the Individual Defendants, First National, and First Bank violated Section 20(a) of the 1934 Act.

58. As set forth above, the Individual Defendants, First National, and First Bank had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff is threatened with irreparable harm.

## **PRAYER FOR RELIEF**

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Prospectus that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: April 27, 2021                               **RIGRODSKY LAW, P.A.**

By: */s/ Gina M. Serra*
Seth D. Rigrodsky
Timothy J. MacFall
Gina M. Serra
Vincent A. Licata
825 East Gate Boulevard, Suite 300
Garden City, NY 11530
Telephone: (516) 683-3516
Email: sdr@rl-legal.com
Email: tjm@rl-legal.com
Email: gms@rl-legal.com
Email: vl@rl-legal.com

*Attorneys for Plaintiff*